**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

_____ )
)
**Aman Rastyar**                                               )
)
**Istorey Niazi**                                               )
)
**Omid Rastyar**                                               )
             **Plaintiffs**                           )
**v.**                                                                  )   **Civ. No. 19-4487**
)
**Michael R. Pompeo, United States**            )   **Complaint to Compel Agency**
**Secretary of State**                                    )   **Action under 28 U.S.C. § §**
)   **555(b) and 706(1)**
)
**Carl Risch**                                                  )
**Assistant Secretary for Consular Affairs**  )
)
**Edward J. Ramotowski**                             )
**Deputy Assistant Secretary for Visa**        )
**Services**                                                     )
)
)
**William Barr, Attorney General**               )
**U.S. Department of Justice,**                      )
)
**John R. Bass,**                                            )
**U.S. Ambassador; Kabul, Afghanistan**     )
)
**Karen Decker,**                                          )
**Deputy Chief of Mission, Afghanistan**     )
)
**Chad Wolf, Acting Secratary**                   )
**Department of Homeland Security**           )
)
**Carson Wu,**                                               )
**Consul General for the U.S. Embassy,**      )
**Kabul, Afghanistan**                                   )
)
         **Defendants**                            )
_____ )

<u>**PLAINTIFF'S COMPLAINT FOR WRIT OF MANDAMUS**</u>

1

COMES NOW, Plaintiffs, Omid Rastyar, Aman Rastyar, and Istorey Niazi, by and through undersigned counsel, complains of the following Defendants in support of this Writ of Mandamus, Michael R. Pompeo, United States Secretary of State, U.S. Citizenship and Immigration Services; Secretary, U.S. Department of Homeland Security; Kenneth T. Cuccinelli, Director, United States Citizenship and Immigration Services, William Barr, Attorney General, U.S. Department of Justice, Ambassador John Bass, United States Ambassador to Afghanistan, Karen Decker, Deputy Chief of Mission, Kabul Afghanistan, Carson Wu, Consul General for the U.S. Embassy, Kabul Afghanistan,, and the United States Department of State (collectively referred to as "Defendants"). In support of his complaint for Writ of Mandamus, Plaintiffs would show the Court the following:

## I. INTRODUCTION

1. This is a civil action to compel the Defendants and those acting under them to take immediate action and to proceed with performing a duty owed to Plaintiffs, to adjudicate Aman Mohammad Rastyar and Istorey Niazi's Immigrant Visa Applications. These applications have been pending in the U.S. Consulate in Kabul, Afghanistan since January 22, 2019. Defendants have improperly withheld action on said application to Plaintiff's Detriment.

2. Two Petition for Alien Relatives visas, Form I-130 ("I-130 applications"), were properly filed by the Plaintiff, Omid Rastyar. Plaintiff filed its I-130 application for beneficiary Aman Mohammad Rastyar which was received by the Defendant, U.S. Citizenship and Immigration Services ("U.S.C.I.S.") of the U.S. Department of Homeland Security ("DHS"), on August 7, 2017. Plaintiff, Omid Rastyar, filed another I-130 application for beneficiary Istorey Niazi which was received by the Defendant, U.S. Citizenship and

Immigration Services ("U.S.C.I.S.") of the U.S. Department of Homeland Security ("DHS"), on August 7, 2017. This action is brought for declaratory and injunctive relief to compel final agency action which has been unlawfully withheld and unreasonably delayed with respect to Plaintiff's Immigrant visa applications to the detriment of the rights and privileges of the Plaintiff.

3. The U.S.C.I.S. Receipt Number of the I-130 applications are LIN1790854238 for Istorey Niazi and LIN1790854237 for Aman Mohammad Rastyar. *See* Ex. A, Notice of Action, Filing Fee Receipt. USCIS transmitted the approved file to the National Visa Center (NVC) for further processing. Plaintiffs provided all documentation the NVC required, and the NVC transferred the case to the appropriate consulate for an interview on January 22, 2019. In the nine months since the interview, Plaintiffs have not received a decision on the case. There has been neither the issuance of the immigrant visas, or a denial. Plaintiff requests that this Court compel the Defendants to perform their mandatory duty to adjudicate the Petitioner's long pending I-130 applications without further unreasonable delay and issue visas to Plaintiffs Aman Mohammad Rastyar and Istorey Niazi.

## II. JURISDICTION

4. This court has jurisdiction over the present action pursuant to 8 U.S.C. § 1151(b)(2)(A)(i), Immigration and Nationality Act § 203(b)(2)(A)(i); 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1361; (action to compel an officer of the United States to perform his duty); 5 U.S.C. §701 et seq.(Judicial Review of Agency Actions); and 28 U.S.C. §2201 et seq. (Declaratory Judgments).  Relief is requested pursuant to said statutes, to redress the deprivation of rights, privileges and immunities secured to Plaintiffs, by which jurisdiction is conferred, to compel Defendants to perform duties they owe to the Plaintiff.

Plaintiff is aggrieved by adverse agency action in this case.  The Administrative Procedures Acts requires an agency to carry out its duties within a reasonable time, with due regard for the convenience and necessity of the parties or their representatives, to conclude a matter presented to it.  A consular official's discretionary decision to grant or deny a visa petition is not subject to judicial review; however, there is jurisdiction where consul fails to take action.  *Patel v. Reno*, 134 F.3d 929, 93102 (9th Cir. 1997). Jurisdiction is further conferred by 5 U.S.C. §§ 555(b) and 704, the Administrative Procedures Act ("APA").

5.   Under 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Petitioner.".

6.   The APA also requires U.S.C.I.S. to carry out its duties within a reasonable time. 5 U.S.C. § 555(b) (providing that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it"). If the agency fails to render a decision within a reasonable time, the Court has power under 5 U.S.C. § 706(1) to compel the agency to do so. 5 U.S.C. § 706 (1) (conferring power on the U.S. District Courts to compel agencies to perform "action unlawfully withheld or unreasonably delayed"). As set forth below, the Department of State's delay in processing the Petitioner's visas is unreasonable.

7.   The Court has jurisdiction to award costs and attorney's fees to Plaintiff pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504, and 28 U.S.C. § 2412(d), et seq.

### III. <u>VENUE</u>

8.   Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(e), because this is an action against officers and agencies of the United States in their official capacities,

brought in the district where a substantial part of the events or omissions giving rise to the Petitioner's claim occurred. Petitioner's I-130 applications are approved and principal application currently resides within the Southern District of Texas, which is located within the judicial district and division.

## IV. <u>PARTIES</u>

9.  The Plaintiff, Omid Rastyar (hereinafter referred to as "Omid"), is a citizen of the United States. Omid served as a translator supporting United States Armed Forces in Afghanistan from 2008 until 2013. He became a naturalized citizen on June 21, 2017. He is the principal applicant on the two I-130 petitions for his parents, having properly filed two I-130 applications that were approved by U.S.C.I.S., a bureau of the Department of Homeland Security (DHS). Plaintiff, is a resident of the State of Texas and resides in Houston, Texas.

10. The Plaintiff, Aman Mohammad Rastyar, is the father of Omid Rastyar. Aman was born in Afghanistan and currently resides there. As an Afghanistani national, his official identification and travel documents are issued by the Afghanistani government. Plaintiff, Aman Mohammad Rastyar, is an application for an immigrant visa currently pending at the United States Embassy/Consulate in Kabul, Afghanistan.

11. The Plaintiff, Istorey Niazi, is the mother of Omid Rastyar. Istorey was born in Afghanistan and currently resides there. As an Afghanistani national, her official identification and travel documents are issued by the Afghanistani government. Plaintiff, Istorey Niazi, is an application for an immigrant visa currently pending at the United States Embassy/Consulate in Kabul, Afghanistan.

12. The Defendant Michael R. Pompeo is the United States Secretary of State. This suit is brought against Secretary Pompeo in his official capacity, as he is charged with adjudicating all visa issuances applications that fall within his office's jurisdiction. Department Michael R. Pompeo may be served at: The Executive Office, Office of the Legal Adviser, Suite 5.600, 600 19th Street NW, Washington, D.C. 20522.

13. The Defendant William Barr is the Attorney General. This suit is brought against Attorney General Holder in his official capacity, as applicants for naturalization must establish eligibility to the satisfaction of the Attorney General. Defendant Barr's office address is 950 Pennsylvania Avenue, NW, Washington, DC, 20530.

14. The Defendant Carl Risch is the Assistant Secretary for Consular Affairs. This suit is brought against Assistant Secretary in his official capacity, as he is charged with overseeing consular affairs. Defendant Carl Risch may be served at: The Executive Office, Office of the Legal Adviser, Suite 5.600, 600 19th Street NW, Washington, D.C. 20522.

15. The Defendant Edward J. Ramotowski is the Deputy Assistant Secretary for Visa Services. This suit is brought against Assistant Secretary in his official capacity, as he is charged with overseeing visa services. Defendant Edward J. Ramotowski may be served at: The Executive Office, Office of the Legal Adviser, Suite 5.600, 600 19th Street NW, Washington, D.C. 20522.

16. The Defendant Kenneth T. Cuccinelli is the Director of United States Citizen Immigration Services ("U.S.C.I.S."). This suit is brought against Director Cuccinelli in his official capacity. Defendant Cuccinelli's office address is U.S. Citizenship and Immigration Services, 20 Massachusets Ave NW, Washington, DC 20529.

17. The Defendant John R. Bass is the United States Ambassador in Kabul, Afghanistan. This suit is brought against the Ambassador in his official capacity, as he is charged with overseeing visa services. Defendant John R. Bass may be served at: The Executive Office, Office of the Legal Adviser, Suite 5.600, 600 19th Street NW, Washington, D.C. 20522.

18. The Defendant Carson Wu is the Consul General for the United States Embassy in Kabul. This suit is brought against Consul General in his official capacity. Defendant Carson Wu may be served at: The Executive Office, Office of the Legal Adviser, Suite 5.600, 600 19th Street NW, Washington, D.C. 20522.

19. The Defendant Chad Wolf is the Acting Secratary for the United States Department of Homeland Security. This suit is brought against Acting Secretary Wolf in his official capacity. Defendant Chad Wold may be served at: The Executive Office, Office of the Legal Adviser, Suite 5.600, 600 19th Street NW, Washington, D.C. 20522.

20. Each Defendant is sued in his or her official capacity. Defendants Barr, Wolf, Cuccinelli, et. al are responsible for the adjudication and grant or denial of applications for visas filed by applicants, including Petitioner, pursuant to 8 U.S.C. § 1421, 8 U.S.C. §1427, 8 U.S.C. § 1446, 8 C.F.R. § 2.1, 8 C.F.R. § 103.1(a), 8 C.F.R. 310.2 and 8 C.F.R. § 316.3.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

21. No exhaustion-of-remedy requirement applies to the Petitioner's complaint for writ of mandamus to adjudicate Petitioner's application for immigrant visas. There are no administrative remedies provided for neglect of duty. The Petitioner is owed a duty – the adjudication of his properly filed immigrant visa applications, which have been duly filed with the department of state. Defendants have unreasonably delayed a decision on Omid and his parents visa applications. The Plaintiff has no other adequate remedy available for

the harm he seeks to redress – the failure of DOS to adjudicate a timely visa application following an approved I-130 (after an interview has been conducted.)

22. Plaintiffs have made numerous inquiries and received no substantive answer and no hope that there will ever be a decision within a reasonable time.  Mandamus is appropriate, because there is no other remedy at law. Plaintiff seeks to compel a decision to be made pursuant to mandamus, and pursuant to the Administrative Procedures Act for administrative action wrongfully withheld.

## VI. STATUTORY AND REGULATORY FRAMEWORK

23.  Immigration based on a foreign national's familial relationship with a United States citizen or lawful permanent resident (LPR) is the primary method by which foreign nationals may seek to immigrate to the United States.

24. Under the INA, family-sponsored visas may be issued to, inter alia, the siblings of U.S. citizens. 8 U.S.C. § 1153(a)(1)-(4). The spouses and children of the sibling applicant are permitted to apply for immigrant visas as derivative beneficiaries. Id. § 1153(d).

25. The family-sponsored immigration process is initiated when a citizen or LPR sponsors a qualifying family member by filing a Petition for Alien Relative (Form I-130) with USCIS. 8 U.S.C. § 1154. USCIS then verifies that the petitioner is a United States citizen or LPR and that a qualifying familial relationship exists between the petitioner and the beneficiary. 8 C.F.R. § 204.1(a)(1).

26. Filing a Form I-130 establishes a "priority date," which is used to determine when the beneficiary of a petition—along with any derivative beneficiaries—is permitted to move forward with the visa application process. 8 C.F.R. § 204.1(c). Because the number of individuals seeking to immigrate under the family-sponsored preference system far

outpaces the number of visas available in any given year, visas are issued chronologically according to petition priority dates.

27. If an I-130 petition is approved, USCIS forwards the approved petition to the Department of State, National Visa Center (NVC). Once the priority date becomes "current"— indicating that a visa is available based on the beneficiary's preference status—the beneficiary is able to begin the process of formally applying for a visa by submitting a DS-260 Online Immigrant Visa and Alien Registration Application with the NVC.

28. After completing the DS-260 application, filing supporting documentation, completing a medical examination, and paying applicable fees, a beneficiary is interviewed by a consular officer at the beneficiary's applicable U.S. embassy or consulate.

29. During the interview, the applicant executes Form DS-260 by swearing to or affirming its contents and signing it before a consular officer. See 22 C.F.R. § 42.67. The Department of State website instructs that "[a]t the end of your immigrant visa interview at the U.S. Embassy or Consulate, the consular officer will inform you whether your visa application is approved or denied." The Immigrant Visa Process, U.S. Department of State, Bureau of Consular Affairs, available at https://travel.state.gov/content/visas/en/immigrate/immigrant-process/interview/after.html (last visited October 8, 2019).

30. Once "a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and its implementing regulations, the consular officer must either issue or refuse the visa under INA 212(a) or INA 221(g) or other applicable law." 22 C.F.R. § 42.81(a). The Department of State Foreign Affairs Manual (FAM) further explains that "[o]nce an application has been executed, the consular

officer must either issue the visa or refuse it. A consular officer cannot temporarily refuse, suspend, or hold the visa for future action. If the consular officer refuses the visa, he or she must inform the applicant of the provisions of law on which the refusal is based, and of any statutory provision under which administrative relief is available." 9 FAM § 504.1-3(g).

31. If the consular officer determines that a visa should be issued, the officer is required to arrange the appropriate visa documentation and sign and seal the immigrant visa, consistent with the requirements set forth in 22 C.F.R. § 42.73. "The immigrant visa shall then be issued by delivery to the immigrant or the immigrant's authorized agent or representative." Id. § 42.73(d).

32. Conversely, if the consular officer determines that the visa should be refused, the officer must have a basis for refusal that is "specifically set out in the law or implementing regulations." 22 C.F.R. § 40.6. The officer also must comply with the refusal procedure outlined in 22 C.F.R. § 42.81(b), which mandates, in relevant part, that the "consular officer shall inform the applicant of the provision of law or implementing regulation on which the refusal is based and of any statutory provision of law or implementing regulation under which administrative relief is available."[1]

33. If a consular officer determines that additional information is required from an applicant or that a Security Advisory Opinion—known as "administrative processing"—is necessary to determine an applicant's eligibility, the officer must deny the application under INA § 221(g), pending future consideration once additional information is received or

---

[1] State Department guidelines provide additional details regarding the manner in which visa applications should be refused, including a requirement that officers notify applicants, orally and in writing, who are refused a visa under INA Sections 212(a) or 221(g). See 9 FAM § 504.11-3(A)(1) (setting forth the required contents of 212(a) and 221(g) refusal letters).

administrative processing is concluded. See 9 FAM 504.11-3(B)(2)(a) ("If, after interviewing the applicant, you decide that an advisory opinion is necessary, you must first refuse the alien under INA 221(g).") The FAM categorizes Section 221(g) refusals issued for the purpose of conducting administrative processing as "Quasi-Refusal Cases." 9 FAM 504.11-3(B).

34. When a "quasi-refusal" is issued pursuant to INA § 221(g), the applicant must be notified both orally and through a refusal letter, which is required to "[e]xplicitly state the provision of the law under which the visa was refused." 9 FAM 504.11-3(A)(1).

35. 44. In the event that a visa is refused, the application *must* be reconsidered if "within one year from the date of refusal [the applicant] adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based." 22 C.F.R. § 42.81(e).

## VII. FACTUAL ALLEGATIONS

### *Executive Orders 13769 and 13780*

36. On January 27, 2017, President Trump issued Executive Order 13769, "Protecting the Nation From Foreign Terrorist Entry Into the United States." 82 Fed. Reg. 8977 (Feb. 1, 2017) ("EO-1"). Section 3(c) of EO-1 suspended visa adjudication and issuance for nationals of seven Muslim-majority countries: Iran, Iraq, Libya, Somalia, Sudan, Syria, and Yemen.

37. EO-1 was immediately challenged in several courts and was quickly enjoined in large part, most significantly by a nationwide injunction issued on February 3, 2017. *See Washington v. Trump*, No. C17-0141-JLR, 2017 WL 462040 (W.D. Wash. Feb. 3, 2017) (enjoining sections 3(c), 5(a)-(c), and 5(e) of EO-1); *Darweesh v. Trump*, No. 17 CV 480, 2017 WL 388504 (E.D.N.Y. Jan. 28, 2017) (prohibiting the government from removing individuals

pursuant to EO-1); *Aziz v. Trump*, No. 1:17 CV 116, 2017 WL 580855 (E.D. Va. Feb. 13, 2017) (granting preliminary injunction of portions of EO-1 on Establishment Clause grounds).

38. On March 6, 2017, President Trump issued a second executive order, which revoked and replaced the first. *See* Exec. Order No. 13780, "Protecting the Nation from Foreign Terrorist Entry Into the United States," 82 Fed. Reg. 13209 (Mar. 9, 2017) ("EO-2" or "Second Executive Order"). As relevant here, section 2(c) of EO-2 bans nationals of six (rather than seven) overwhelmingly Muslim countries from "entry into the United States" for a period of 90 days, beginning on the order's effective date of March 16, 2017. Order § 2(c); *see id*. § 1(g) (stating that the Order omits Iraq because of its "close cooperative relationship" with the United States).

39. Section 12(c) of the Second Executive Order provides that "no immigrant or nonimmigrant visa issued before the effective date of this order shall be revoked pursuant to this order." Order § 12(c).

40. The stated effective date of the Second Executive Order was March 16, 2017. *See id*. § 14. Accordingly, between March 6, 2017 (the date the Order was issued), and March 15, 2017, the Order was not in effect. As with the first Executive Order, the second was also immediately challenged in court.

41. Acknowledging the delayed effective date, the State Department issued a cable on March 10, 2017, providing guidance to all diplomatic and consular posts regarding EO-2. *See* (SBU) New Executive Order 13780: PROTECTING THE NATION FROM FOREIGN TERRORIST ENTRY INTO THE UNITED STATES - GUIDANCE TO VISA-ISSUING POSTS, 17 STATE 23338. The cable announced the issuance of EO-2, the rescission of EO-1, and explained that "[w]e

12

are working with the Department of Justice to determine when and how we may proceed with implementing the new E.O., in light of pending litigation. Although posts should be prepared to implement this guidance as of [March 16, 2017], do not begin implementation until you receive authorization to do so; such authorization will be sent in a subsequent cable." *Id.* ¶ 1. On March 15, 2017, the U.S. District Court for the District of Hawai'i issued a nationwide injunction enjoining Defendants from enforcing or implementing sections 2 and 6 of the Second Executive Order. *Hawai'i v. Trump*, No. CV 17-00050 DKW-KSC, 2017 WL 1011673 (D. Haw. Mar. 15, 2017). Thus, this ruling enjoined the section suspending entry of nationals from Syria into the United States before it ever took effect.

42. On March 16, 2017, the Department of State issued another cable providing guidance to visa-issuing posts to halt implementation of EO-2, based on District of Hawai'i ruling. *See* (SBU) Executive Order 13780: Protecting the Nation From Foreign Terrorist Entry into the United States - Guidance to Visa Issuing Posts: Halt Implementation, 17 STATE 24800. The cable instructed that the March 15 order in *Hawai'i v. Trump* "took effect immediately, so all enforcement of the visa suspension in the Executive Order must not be implemented and visa processing must continue as normal" Id. ¶ 1.

43. On June 12, 2017, the U.S. Court of Appeals for the Ninth Circuit issued an order upholding, in large part, the injunction issued by the U.S. District Court for the District of Hawai'i. *See Hawai'i v. Trump*, 859 F.3d 741 (9th Cir. 2017) (per curiam).[2]

---

[2] The Ninth Circuit affirmed the injunction as to section 2(c), which suspended entry of nationals from the six designated countries for 90 days; section 6(a), which suspended the U.S. Refugee Admissions Program for 120 days; and section 6(b), which capped the entry of refugees to 50,000 in fiscal year 2017. The Court vacated the portions of the injunction that prevented the government from conducting internal reviews, as otherwise directed in sections 2 and 6, and the injunction to the extent that it ran against the President. *Hawai'i v. Trump*, 859 F.3d 741 (9th Cir. 2017) (per curiam).

44. On May 25, 2017, the U.S. Court of Appeals for the Fourth Circuit issued a decision in *International Refugee Assistance Project v. Trump*, affirming a preliminary injunction against enforcement of section 2(c) of the Executive Order. 857 F.3d 554 (4th Cir. 2017) (en banc) (*affirming in part Int'l Refugee Assistance Project v. Trump*, 241 F. Supp. 3d 539 (D. Md. 2017)).

45. Defendants in those cases petitioned the Supreme Court for a writ of certiorari and applied for a stay of the injunctions pending appeal. On June 26, 2017, the Supreme Court granted certiorari, granted the stay application in part, and consolidated the two cases. *See Trump v. Int'l Refugee Assistance Project*, Nos. 16-1436 and 16-1540 (June 26, 2017) (per curiam).

46. The Court stayed the Hawai'i injunction with respect to "foreign nationals abroad who have no connection to the United States," but it reaffirmed that sections 2(c), 6(a), and 6(b) of EO-2 "may not be enforced against foreign nationals who have a credible claim of a bona fide relationship with a person or entity in the United States." *Id.* at 11-13. That standard, the Supreme Court made clear, protects any foreign national with a "close familial relationship" with a person in the United States. *Id.* at 11-12. The government almost immediately conceded that sibling relationships count as a "bona fide relationship" that prevents the application of the Executive Order.

47. Following the Supreme Court's ruling, the Department of State began to enforce the non-enjoined portions of the Second Executive Order, adopting a narrow interpretation of the "close familial relationship" exception. This practice was challenged in court, and on July 13, 2017, the U.S. District Court for the District of Hawai'i modified its preliminary injunction to prohibit the Government from applying sections 2(c), 6(a) and 6(b) of EO-2

to grandparents, grandchildren, brothers-in-law, sisters-in-law, aunts, uncles, nieces, nephews, and cousins of persons in the United States. The Court concluded that such individuals have sufficiently "close family relationship" to fall within the ambit of the preliminary injunction, as modified by the Supreme Court. *Hawaiʻi v. Trump*, No. CV 17-00050 DKW-KSC, 2017 WL 2989048 (D. Haw. July 13, 2017).

48. On July 19, 2017, the Supreme Court denied the Government's motion seeking clarification of the Court's June 26, 2017 order, thereby leaving the Hawaiʻi court's July 13, 2017 modified injunction in place. *See Trump v. Hawaiʻi*, No. 16-1540, --- S. Ct. ---, 2017 WL 3045234 (U.S. July 19, 2017).

49. The State Department's website subsequently instructed that "[i]n light of the July 13, 2017 U.S. District Court of Hawaiʻi ruling regarding the definition of 'close familial relationship' as that phrase was used in the Supreme Court's June 26, 2017 order on implementing section 2(c) of E.O. 13780, a close familial relationship is defined as a parent (including parent-in-law), spouse, fiancé, child, adult son or daughter, son-in-law, daughter-in-law, sibling, grandparents, grandchildren, brothers-in-law, sisters-in-law, aunts and uncles, nephews and nieces, and cousins."

50. On information and belief, between March 6, 2017 (the date of issuance of the second Executive Order) and March 15, 2017 (the date the Order was enjoined), some consulates or consular officials began to halt or delay the processing of visa applications for nationals from the six-impacted countries, while awaiting further instructions on how to implement the terms of the Order. Many consulates are still unreasonably withholding the processing of proper visa applications.

***Plaintiffs Visa Applications***

15

51. Petitioner, Omid, is a native of Afghanistan and a citizen of the United States of America. He is a proud citizen who has served with the United States Army.

52. Omid became a lawful permanent resident on July 4, 2011. On June 21, 2017 Omid became a United States citizen. Omid served as a translator for the United States Armed Forces in Afghanistan from 2008 to 2013. To this day, he is a proud of being a part of this nation.

53. On or about August 7, 2017, Omid applied for his parents I-130 applications. Both Aman Mohammad Rastyar and Istorey Niazi's applications were filed on August 7, 2017. *See* Exhibit A. Following receipt of the approval notice, Omid received interview notices for his parents to appear at an interview at the United States Consulate in Kabul, Afghanistan. Both beneficiaries, Aman Rastyar and Istorey Niazi, appeared and presented themselves for the interview. An interview was conducted by an officer of the Department of State on January 22, 2019.

54. During the interview, both Aman Mohammad Rastyar and Istorey Niazi were informed that the interview went well and no further documents were required. They were informed that the case would require administrative processing and were given the attached notices. *See* Exhibit B. The consulate kept the passports for both Aman Mohammad Rastyar and Istorey Niazi and continue to possess them.

55. On January 24, 2019, Omid received an email from the consulate requesting information regarding social media, phone numbers, and information regarding siblings. Omid promptly responded to this request timely by responding on January 25, 2019.

56. This complaint does not seek a grant of a visa from the Court. Rather, this complaint merely requests that the applications be adjudicated in a timely fashion. It has been ten months since the parents interviews and over 2 years since the applications were filed.

57. Defendants' refusal to issue the approved visas deprives Omid and his parents of their rights under the INA, the APA, and agency policy. The inaction has caused Plaintiffs to be separated from their loved ones.[3]

58. Omid and his parents have fully complied with all the statutory and regulatory requirements in the visa application process. Accordingly, they have a clear right to the issuance of the visas. Defendants have unreasonably failed to issue the visas or adjudicate the visa application, in dereliction of their non-discretionary duties.

59. On July 16, 2019, and September 12, 2019, the Petitioner, Omid, has requested status updates on his case through NVC inquiries. He was informed that the case was still undergoing administrative processing. He has neither received any updates on the visa applications, nor has he received any request for further information.

60. Omid has also attempted a congressional inquiry which has provided no answers. The congressional; inquiry was conducted with the office of Representative Pete Olsen. The office conducted an inquiry with the consul general who provided the following response:

> *Dear Ms. Davis,*
> *Thank you for your email regarding Mr. Mohammad Aman Rastyar's case (KBL2018644008) and Ms. Niazi Istorey's case (KBL2018644009).*
>
> *These applications are still undergoing mandatory administrative processing. We understand how difficult it is to be separated from family and process cases as expeditiously as possible while ensuring that applicants are both qualified for a visa and do not pose a security risk to the United States.*
>
> *We advise applicants to check the status of their case using the following website: https://ceac.state.gov/ceacstattracker/status.aspx*
>
> *I hope this information is helpful.*

---

[3] It should be noted that Omid also filed an I-130 for his wife at the time. The unreasonable delay in the adjudication of her visa application caused irreparable harm to their relationship. This ultimately resulted in Omid having to divorce his wife.

*Sincerely,*
*Consul General*
*Consular Section | Embassy of the United States of America | Kabul,*
*Afghanistan*

61. Omid's counsel, has also attempted to request updated through the Embassy in Kabul on March 29, 2019 and June 7, 2019. The only answer we received was that the case is currently undergoing administrative processing. There has not been any additional request for evidence.

62. District courts have mandamus jurisdiction to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. §1361. Moreover, a district court reviewing agency action under the APA may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "Agency action" includes, in relevant part, "an agency. rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

63. The APA requires administrative agencies to conclude matters presented to them "within a reasonable time." 5 U.S.C. § 555. The INA's implementing regulations further provide that "[w]hen a visa application has been properly completed and executed before a consular officer in accordance with the provisions of INA and the implementing regulations, the consular officer must either issue or refuse the visa under INA 212(a) or INA 221(g) or other applicable law." 22 C.F.R. 42.81 (emphasis added). Similarly, State Department policy makes clear that "[o]nce an application has been executed, the consular officer must either issue the visa or refuse it. A consular officer cannot temporarily refuse, suspend, or hold the visa for future action." 9 FAM 504.1-3(f). Under State Department policy, "[t]here are no exceptions to th[is] rule." 9 FAM 504.1-3(h).

64. The issuance or denial of visas is the responsibility of consular officers, conferred by the Immigration and Nationality Act of 1952. *Li Hing of Hong Kong Inc. v. Levin*, 800 F.2d 970, 971 (9th Cir. 1986); 8 *U.S.C.* § 1201(a)(1); 8 *U.S.C.* §§ 1101(a)(9), (16).

65. No judicial or administrative review of a consular officer's decision to issue or deny a visa is available, as the decision has been held to be discretionary duty. *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1997); *Li Hing of Hong Kong Inc. v Levin*, 800 F.2d at 971, *Luo v. Coltice*, 178 F.Supp. 2d 1135, 1139 (C.D. Cal. 2001). However, the non-reviewability doctrine is inapplicable in the case of the failure of the consular office to perform a non-discretionary duty to either issue or deny the visa. *Patel v. Reno* at 134 F.3d at 932.

66. Here, Defendants failed to adjudicated Plaintiffs' visa applications. That decision, which was communicated to Plaintiffs by stating that their case was undergoing administrative processing, triggered Defendants' obligation to adjudicate the case within a reasonable time.

67. Defendants have a ministerial duty to make a decision on that application. Defendants have a duty to adjudicate all visa applications; it is mandatory. 22 *C.F.R.* § 42.81(a). Once formal application has been made, the visa cannot be pending indefinitely or informally refused. *State Department Foreign Affairs Manual* § 42.81, N. 1.

68. Defendants' refusal to act in this case is, as a matter of law, arbitrary and not in accordance with the law. Defendants, willfully and unreasonably, have delayed and refused to adjudicate Plaintiffs' application for over 9 months, thereby depriving Plaintiffs of the right to a decision on the visa application.

69. Plaintiffs have a right to a decision on the application within a reasonable time. Section 555(b) of the Administrative Procedures Act states "with due regard for the convenience

and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." *See* 5 *U.S.C.* § 555(b), *see also*, *Haidari v. Frazier*, 06-3215, 2006 U.S. Dist. LEXIS 89177 (D. Minn. December 8, 2006).

70. Defendants' failure to act violates the APA, 5 U.S.C. § 706(1), the INA and its implementing regulations, and agency policy. Because Defendants have failed to carry out their duties and obligations under the law and governing regulations, thereby depriving Plaintiffs of their clearly-established rights, Plaintiffs are entitled to a writ of mandamus and/or relief under the APA directing Defendants to issue their visas forthwith.

71. Plaintiffs have been greatly damaged by the failure of Defendants to act in accord with their duties under the law.  Plaintiffs are a family and they continue to be separated; they are advanced in age; Plaintiff Aman Mohammad Rastyar and Istorey Niazi are in an advanced age.  Plaintiff Omid is a U.S. citizen who has a right to family unity in the United States.

72. The Defendants, in violation of the Administrative Procedures Act, 5 *U.S.C.* §701 *et seq.*, are unlawfully withholding or unreasonably delaying action on Plaintiff's application and have failed to carry out the adjudicative functions delegated to them by law with regard to Plaintiffs' case.

73. Plaintiffs have made status inquiries in an attempt to secure adjudication of the application, all to no avail.

74. The Equal Access to Justice Act (EAJA), 28 *U.S.C.* §2412(d) and 5 *U.S.C.* §504 et seq., authorizes payment of attorney fees and costs for successful litigation against the government in federal courts.

75. In the event that Plaintiffs prevail in this action, they request the Court to award them

reasonable attorney fees and costs pursuant to the EAJA.

76. The pre-litigation and litigation position of the government in this action was not substantially justified, and there are no special circumstances that would make an EAJA award unjust.

77. Plaintiff meets the appropriate "net worth" requirements of 28 *U.S.C.* §2412(d)(2)(B).

78.

## VI. <u>COUNT I</u>
## <u>(WRIT OF MANDAMUS)</u>

79. The averments set forth above are restated and incorporated by reference.

80. A mandamus Petitioner must demonstrate that: (i) he or she has a clear right to the relief requested; (ii) the Defendant has a clear duty to perform the act in question and (iii) no other adequate remedy is available. *Wolcott v. Sebelius*, 635 F.3d 757, 768 (5th Cir. 2011); *Iddir*, 301 F. 3d at 499; *see also Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 113 (D.D.C. 2005). The Petitioner meets these criteria.

81. The INA and the regulations issues pursuant to it impose on Defendants a non-discretionary duty to issue visas once the decision to issue them has been made. The APA further requires agencies to "proceed to conclude a matter presented" to the agency "within a reasonable time." 5 U.S.C. § 555(b).

82. Mandamus action is also appropriate because the Defendants have failed to act within a reasonable period of time. *See, e.g. Ahmadi v. Chertoff*, 533 F. Supp. 2d at 821-22 .Where such relief not available, the Defendants could hold the visa applications in abeyance for decades without providing any reasoned basis for doing so. Such an outcome defies logic – the Defendants simply do not possess the unfettered discretion to relegate noncitizens to

a state of "limbo, leaving them to languish there indefinitely." *Kim*, 340 F. Supp. 2d at 393; *see American Academy of Religion v. Chertoff*, 463 F. Supp. 2d 400 (S.D.N.Y. 2006).

83. Generally, in determining what is "unreasonable," courts may look to a variety of factors, including any Congressional guidance on what it considered to be reasonable, internal operating procedures established by the agency, processing times in similar cases, the source of the delay, and the facts of the particular case. *See TRAC v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984); *see also Nat'l Grain & Feed Ass'n, Inc. v. Occupational Safety and Health Admin.*, 903 F.2d 308, 310 (5th Cir, 1990) (adopting TRAC factors). A court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *Saleem*, 520 F. Supp. 2d at 1058-59.

84. Considering all of these factors, the Defendants' delay in processing Plaintiffs visa applications is plainly unreasonable.

85. Moreover, the Defendants have provided no reasonable explanation for this delay or for their failure to promptly adjudicate the visa application.

86. As the Defendants have failed to carry out their mandatory duty to adjudicate the Petitioner's pending visa, and have unreasonably delayed action for more than nine months without valid justification, and as the Petitioner has exhausted all administrative remedies. *See* 8 U.S.C. § 1329; 28 U.S.C. §§ 1331, 1361; 5 U.S.C. §§ 555(b), 706(1).

87. Furthermore, the Defendants' unreasonable delay is arbitrary and capricious and an unconstitutional violation of the Petitioner's right to due process under the Fifth Amendment. *See* 5 U.S.C. § 706(2) ("[The reviewing court shall] "hold unlawful and set aside agency action" [found to be] "arbitrary, capricious or an abuse of discretion, or otherwise not in accordance with the law."); cf. *Accardi*, 347 U.S. 260 (noting that

unreasonable delay claims may implicate due process because the failure to act is an unlawful means of denying an application that is otherwise approvable).

88. Finally, the Defendants' delay is without justification and has forced the Petitioner to resort to this Court for relief, and the Petitioner is entitled to attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"). 28 U.S.C. § 2412(d)(2)

## VII. COUNT II
## (ADMINISTRATIVE PROCEDURES ACT)

89. U.S.C.I.S. has a duty under the Administrative Procedures Act ("APA") to make a final decision "within a reasonable amount of time." 5 U.S.C. § 555(b).

90. The agency has failed to schedule an interview after his initial interview date; such delay is unreasonable.

91. This Court can and should compel Agency to schedule Petitioner for an interview and adjudicate his case on the merits because the Agency has unreasonable withheld and delayed such decision. 5 U.S.C. § 555(b). Petitioner is not asking for a favorable grant of discretion. Merely that Agency adjudicate Petitioner's claim based on the merits of his application.

## VIII. COUNT III
## (CLAIM FOR EQUAL ACCESS TO JUSTICE FEES)

92. Defendants failure to adjudicate Omid and his parents visa applications in a reasonable amount of time is substantially unjustified.

93. Plaintiff is therefore, entitled to reasonable attorney's fees under the Equal Access to Justice Act.

## IX. PRAYER

WHEREFORE, the Petitioner prays that the Court:

1. Compel the Defendants and those acting under them to perform their duty to adjudicate Omid's Parents visa applications;

2. Enter a declaratory judgment that the Defendants' unreasonable delay violates the U.S. Constitution, the INA, the federal regulations, the APA, and that such delay is arbitrary and capricious;

3. Grant attorney's fees and costs of Court to the Petitioner under the Equal Access to Justice Act; and

4. Grant such other and further relief, as this Court deems proper under the circumstances.

Respectfully submitted this _____ day of _____, 2019.

By: /s/ Ammar Dadabhoy_____
Ammar Dadabhoy
State Bar No. 24088812
Adadabhoy@wongfleming.com
Wong Fleming
77 Sugar Creek Center Blvd., # 401
Sugar Land, Texas 77478
Tel: (281)-340-2074
Fax: (866)- 240-0629